**Ellis PARTEE, Plaintiff,**

v.

**COOK COUNTY SHERIFF'S OFFICE, et al., Defendants.**

No. 91 C 4225.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 27, 1994.

---

Ellis Partee, pro se.

Randolph Mitchell Johnston, Terry L. McDonald, Cook County State's Attorneys Office, Chicago, IL, for other defendants.

Gregory E. Rogus, John Joseph Madden, Segan, McCambridge, Singer & Mahoney, Ltd., Chicago, IL, for E. Steineke.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff Ellis Partee brings this sprawling pro se civil rights suit seeking damages, injunctive, and declaratory relief against thirty-five defendants. The court summarily dismissed the claims against eleven of those defendants as frivolous in its order of November 15, 1991. With one exception, the remaining named defendants now move to

dismiss the complaint for failure to state a claim upon which relief may be granted.[1]

Partee is serving a lengthy prison sentence as a result, in part, of his conviction for attempt armed robbery and aggravated battery of a woman in the parking lot of the Woodfield Shopping Mall in Schaumburg, Illinois. *See People v. Partee*, 157 Ill.App.3d 231, 110 Ill.Dec. 845, 511 N.E.2d 1165 (1987), *cert. denied*, 484 U.S. 1072, 108 S.Ct. 1043, 98 L.Ed.2d 1006 (1988). Partee's second amended complaint in this action flows out of the proceedings related to that conviction. The last half of the 43–page second amended complaint focuses on events surrounding Partee's trial. Partee alleges that Schaumburg police officer Edward Steineke allowed Partee to call his attorney on a telephone line that was tapped. Partee charges Ronald Bredemann with various acts of prosecutorial misconduct and alleges several incidents of excessive use of force by law enforcement officers. Two of the alleged assaults are relevant to the motions now before the court. The first assault took place when officers attempted to carry out the court's February 15, 1984 order requiring Partee to give a blood sample. Partee maintains that Cook County deputy sheriffs Alexander, Bintz, Spirololus, Demos, Kabala, Deuel, and Trella beat and kicked him before carrying him to the paddy wagon to be taken to the hospital where the blood sample was to be drawn. He maintains several of the defendants continued to knee him while transporting him in the paddy wagon and, at Bredemann's direction, dropped him on the ground and dragged him into the hospital. Partee further alleges that defendants Bintz, Alexander, and Spirololus beat him up for trying to bring his legal papers to court on April 23, 1984. In addition, Partee asserts that Alexander and Spirololus subjected him to unreasonable strip searches before taking him to his court appearances and forced him to appear in court in restraints.

Between April and October 1991, Partee made a series of appearances at the courthouse for the Circuit Court of Cook County in Rolling Meadows, Illinois to pursue a post-conviction petition he filed to challenge his conviction. The remainder of the second amended complaint sets out incidents of alleged mistreatment during those appearances. Partee's conflict with court officials arose primarily out of a dispute over custody of legal materials Partee brought with him for his court appearances. He at times was not allowed to keep these materials in his holding cell or take them into court with him. Partee also complains that the holding cell where he was confined for a few hours on several occasions did not have cold water or toilet paper. He further alleges that the deputy sheriffs assigned to the Rolling Meadows courthouse forced him to keep his hands behind his back whenever he appeared in court, made verbal threats against him, and otherwise harassed and mistreated him.

The Rolling Meadows defendants—Zerfass, Loochtan, McWhinney, Davita, Commiso, Baratte, and Budnick—contend the allegations against them do not state an actionable claim for relief under 42 U.S.C. § 1983. They maintain the taking of Partee's legal materials did not deprive him of his constitutional right of access to the courts because he had a public defender and was not in any way prejudiced. They further assert that the allegations regarding the conditions of his confinement while at the Rolling Meadows courthouse were not so harsh as to constitute cruel and unusual punishment within the meaning of the Eighth Amendment. Finally, they argue Partee does not state a claim against them in their official capacity because he offers no facts to support his claim that his rights were violated as a result of an official policy or practice of the Cook County Sheriff's Department.

■ Inmates have a constitutional right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Claims based on an alleged denial of the right of access to the courts are judged by a two-prong test. To succeed, plaintiff must show both that defen-

---

1. The exception is defendant Parham whom plaintiff has never served. Partee had ample opportunity to discover Parham's whereabouts and serve him with summons and complaint. In view of the lapse of time without successful service, Parham must be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

dants deprived him of access to legal papers or other materials needed to present his case in a meaningful fashion and that this deprivation resulted in some quantum of detriment to pending or contemplated litigation. *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992). The facts of this case fail to meet either prong of the test.[2]

▪ Partee had the assistance of a public defender during most of his appearances before the court on his postconviction petition. As a general rule, the appointment of counsel is sufficient to discharge the state's obligation to provide an inmate with meaningful access to the courts. *See Howland v. Kilquist*, 833 F.2d 639, 643 (7th Cir.1987). While it appears that Partee at some point rejected the services of the public defender appointed to represent him, that rejection was his choice and does not enhance in any way his right of access to research or other legal materials. *See Martin v. Davies*, 917 F.2d 336, 340 (7th Cir.1990), *cert. denied*, 501 U.S. 1208, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991). Moreover, it is difficult to conceive as to how Partee can complain that defendants' actions denied him his right of access to the courts when he was permitted to appear in person before the judge and argue his case.

▪ The facts further fail to set out the necessary prejudice. Allegations of the total destruction of legal materials will not suffice to state a claim if the plaintiff fails to show any resultant prejudice. *Stewart v. McGinnis*, 5 F.3d 1031, 1036 n. 9 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994). As Partee was able to appear personally before the court, he had sufficient means to protect his right of access to any legal materials necessary to the advancement of his postconviction petition. Indeed, the complaint notes that Partee obtained two orders from the court directing courtroom security personnel to give him access to the materials he had brought with him to the courthouse. On October 7, 1991,

Partee moved to have the Cook County Sheriff's Department held in contempt for failing to comply with those orders. The court denied the motion. Whether the denial was right or wrong, Partee plainly had meaningful access to the courts.

▪ Partee also charges the Rolling Meadows defendants with subjecting him to abusive treatment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment on convicted felons. The Eighth Amendment, however, has both an objective and a subjective component, both of which a plaintiff must satisfy in order to state a claim for relief. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). To meet the objective component, a challenge to the conditions of confinement must be supported by factual allegations demonstrating that plaintiff was deprived of "the minimal civilized measure of life's necessities," as defined by reference to "the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346–47, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (citation omitted). Because Partee's allegations fail to meet the objective component, the court need not determine if the conditions were deliberately imposed upon him as required under the subjective component of the Eighth Amendment.

▪ Partee complains of the conditions of the holding cell where he was kept waiting for several hours before his court appearance. He primarily objects to the lack of cold drinking water and toilet paper. Given the brevity of his stay in the holding cell, these alleged conditions were not so grievous as to violate common standards of decency. *See Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir.1994); *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988). Similarly, Partee's allegations of verbal threats, racial epithets, and continued harassment by the sheriff's deputies assigned to the court do not give rise to an actionable claim for relief under § 1983. *See Daniels v. Southfort*, 6 F.3d

---

2. A showing of prejudice is not needed if plaintiff's claim is premised on a substantial and continuous limitation on access to legal materials. *Jenkins*, 977 F.2d at 269. So such substantial limitations is alleged here, however. Partee was only temporarily deprived of access to his legal materials during some of the times he visited the courthouse. He therefore must allege some prejudice to state a claim for denial of access to the courts.

482, 484 (7th Cir.1993); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir.1987). Accordingly, finding that the allegations of the second amended complaint do not state a claim for relief against the Rolling Meadows defendants, the court grants their motion and dismisses defendants Zerfass, Loochtan, McWhinney, Davita, Commiso, Baratte, and Budnick from the action.[3]

■ Assistant State's Attorney Ronald Bredemann and Schaumburg police officer Edward Steineke have filed separate motions to dismiss contesting the substantive sufficiency of the second amended complaint's allegations against them. Steineke argues that Partee's allegations regarding the recording of Partee's telephone conversation with his attorney do not state a claim against him because Partee does not allege that Steineke knew the line was tapped when he gave Partee the telephone. Reading the complaint and accompanying briefs liberally as required by *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), the court understands Partee to charge Steineke with active complicity in the recording of his telephone conversation. Because the "use of telephone calls of a pre-trial detainee violates the Constitution in certain circumstances," *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir.1991), the court cannot conclude beyond doubt that Partee can prove no set of facts in support of his claim against Steineke.

■ Bredemann urges that his alleged misconduct did not violate Partee's constitutional rights and was protected by the doctrine of prosecutorial immunity. "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, —— U.S. ——, ——, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993). The court agrees that, with but one

exception, Partee's allegations against Bredemann either concern actions he took in connection with the prosecution of the state's case against Partee or are too niggling to implicate the violation of any constitutional right. The exception is Bredemann's purported involvement in the allegedly excessive use of force mustered to obtain Partee's blood sample. Partee alleges that Bredemann told the officers to drag rather than carry him into the hospital. Directing law enforcement officers to use force to gain compliance with a court order does not appear to fall with those prosecutorial functions closely associated with presentation of the state's case. *See Burns v. Reed*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (act of giving advice to police on propriety of using hypnosis to question a suspect not entitled to absolute immunity). Whether the use of force that Bredemann allegedly directed the sheriff's deputies to use was needed under the circumstances cannot be determined from the limited record before the court. Partee may proceed with this claim against Bredemann.

■ Bredemann and Steineke, as well as defendants Alexander, Bintz, Spirololus, Demos, Kabala, Trella, and Deuel, also raise the defense of laches. The claims against these defendants are based on events that took place seven or eight years before Partee first asserted them in his second amended complaint. The statute of limitations for a § 1983 action in Illinois generally is two years. *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir.1992). Until January 1, 1991, Illinois tolled the running of the limitations period for inmates continually confined since the time their claims accrued. *See Dixon v. Chrans*, 986 F.2d 201, 204 (7th Cir.1993). Although Partee was no longer entitled to the benefits of the tolling statute when he filed his second amended complaint, state law, as applied by the federal courts, allows a plaintiff a reasonable amount of time within which to file a claim whenever the limitation

---

**3.** Although the Cook County Sheriff's Department did not join in the motion, dismissal of the individual defendants requires that it also be dismissed. If the actions of the individual officers did not violate Partee's constitutional rights, he cannot maintain a suit against the Department for condoning an unconstitutional practice or policy. *See Vukadinovich v. Zentz*, 995 F.2d 750, 755 (7th Cir.1993). The court therefore *sua sponte* dismisses Partee's claims against the Department pursuant to 28 U.S.C. § 1915(d).

period is statutorily shortened. *Farrell v. McDonough*, 966 F.2d 279, 282 (7th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1059, 122 L.Ed.2d 364 (1993). Having filed his second amended complaint only ten months after the statute depriving inmates of the tolling benefits took effect, Partee brought suit on his claims within a reasonable period of time for purposes of the statute of limitations. *See id.* But a § 1983 complaint that is filed within the limitations period may still be subject to dismissal for laches. *See Herman v. City of Chicago,* 870 F.2d 400, 403 (7th Cir.1989).

Partee's second amended complaint seeks both damages and equitable relief. It therefore is subject to the equitable defense of laches. *Jabbar–El v. Sullivan,* 811 F.Supp. 265, 271 (E.D.Mich.1992); *Harris v. Benyon,* 570 F.Supp. 690, 692 n. 3 (N.D.Ill.1983); *cf. Cannon v. University of Health Sciences,* 710 F.2d 351, 358–59 (7th Cir.1983) (construing former cases to hold only that laches not applicable to actions seeking purely legal relief). Laches requires both a lack of due diligence in filing and material prejudice to the defense. *Union Carbide Corp. v. State Board,* 992 F.2d 119, 123 (7th Cir.1993). "The first question in a laches analysis is whether the plaintiff delayed unreasonably in filing his or her claim." *Bennett v. Tucker,* 827 F.2d 63, 69 (7th Cir. 1987). Once the laches defense is raised, plaintiff bears the burden of justifying any delay in the commencement of his action. *Zelazny v. Lyng,* 853 F.2d 540, 541 (7th Cir.1988). If the plaintiff fails to proffer an adequate excuse for an unreasonable delay, the burden shifts to defendants to show prejudice. *Id.*

Partee offers two reasons for waiting over seven years to assert his claims against those involved in the events surrounding his initial prosecution. He first maintains that the disability of imprisonment hindered his ability to file his claims. The court records reflect, however, that Partee has not had any trouble in the past filing actions during his terms of incarceration. Before filing this case, Partee had filed seven cases stretching back to 1978. Clearly, Partee knew the way to federal court and im-

prisonment alone did not prevent him from filing this action at an earlier date. Partee additionally explains that he did not file earlier because he mistakenly thought the statute of limitations had run. Mistake of law, however, is not itself an adequate excuse for an undue delay. *See Jeffries v. Chicago Transit Authority,* 770 F.2d 676, 680 (7th Cir.1985), *cert. denied,* 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986). Given the length of the delay and the lack of adequate excuse, the court concludes that Partee's delay in bringing this action was unreasonable.

More than unreasonable delay is needed for laches to apply. Defendants must also show that the delay in some way prejudiced their ability to mount a defense. Defendants here offer little more than mere offhand references to faded memories. Unsupported rhetoric is not enough to carry the burden of showing prejudice in a laches defense. *Harris,* 570 F.Supp. at 692. Accordingly, the court denies the motions to dismiss on grounds of laches. Dismissal is without prejudice to plaintiff's right to reassert the laches defense in summary judgment motions supported by proper evidence of prejudice.

In conclusion, the court grants the motion to dismiss of the Rolling Meadows defendants. Defendants Zerfass, Loochtan, McWhinney, Davita, Commiso, Baratte, and Budnick are dismissed from the action. The court dismisses the Cook County Sheriff's Department on its own motion. Defendant Parham is dismissed without prejudice pursuant to Rule 4(m). The motions to dismiss of the remaining defendants and defendant Steineke's motion for more definite statement are denied. Absent a specific showing of need, plaintiff's motion to withdraw the record is denied.